UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE J. FREEMAN, | Case No. 1:23-cv-00035-CDB (SS) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | (Doc. 15) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Lorraine J. Freeman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 13; hereinafter, "AR") and the parties' briefs (Docs. 15, 17), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

I.    **BACKGROUND**

    **A.    Administrative Proceedings and ALJ's Decision**

On June 14, 2016, Plaintiff filed an application under Title II and Title XVIII of the Act for benefits with an alleged onset date of November 10, 2011. (AR 175, 434-442). Plaintiff's claim

---

[1] On February 16, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 12).

was initially denied on October 4, 2016, and again upon reconsideration on January 26, 2017.  (AR 130-31, 171, 175).  Plaintiff requested a hearing before an Administrative Law Judge on February 13, 2017.  (AR 175).

Administrative Law Judge ("ALJ") Thomas J. Gaye held a hearing on September 26, 2018, during which Plaintiff and impartial vocational expert ("VE") Thomas G. Linvill appeared.  (AR 175).  ALJ Gaye issued an unfavorable decision on October 31, 2018.  (AR 175-184).  The Appeals Council vacated the decision and remanded to a different ALJ to issue a new decision.  (AR 191-194).  ALJ Shiva Bozarth held two hearings, one on February 4, 2021, and one on April 28, 2021.  (AR 1564, 1608).  During both hearings, Plaintiff represented herself.  VE John Komar appeared during the first hearing and VE Doug Lear appeared during the second.  (AR 1566, 1610).

The ALJ issued an unfavorable decision on September 8, 2021, finding Plaintiff was not disabled.  (AR 25-39).  The Appeals Council denied Plaintiff's request for review on September 19, 2022, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 11-15).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a).  (AR 27).  The ALJ found that Plaintiff meets the insured status requirements of the Act through September 30, 2016.  (AR 28).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 10, 2011, the alleged onset date.  (AR 28).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments ("MDIs") through the date last insured which significantly limit the ability to perform basic work activities: degenerative disc disease, status-post cervical fusion from C3-C7; adjustment disorder; generalized anxiety disorder; and major depressive disorder.  (AR 29).  The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied, and found the paragraph B criteria were not satisfied and that the mental impairments are non-severe.[2]  (AR

---

[2] The "paragraph B" criteria and the ALJ's findings thereto are not at issue in this action and, hence, not addressed further by the Court.

29-30).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 29).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).  (AR 30).  In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p.  (AR 31).  The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical and other evidence of record.  (AR 32).  The ALJ, citing to Plaintiff's hearing testimony, treatment notes, prior administrative medical findings, and activities of daily living, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments.  (AR 31-38).

At step four, the ALJ determined that Plaintiff has past relevant work, under 20 C.F.R. §§ 404.1565 and 416.965, that she could perform as a quality assurance analyst.  (AR 38).  The ALJ therefore concluded a finding of "not disabled" was appropriate under 20 C.F.R. § 404.1520(f) from November 10, 2011, through the date of the decision.  (AR 39).

**B.    Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.    LEGAL STANDARD**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III.    ISSUES AND ANALYSIS

Plaintiff asserts that the ALJ failed to resolve conflict between the VE's testimony and Plaintiff's past relevant work. *See* (Doc. 15).

### A. Parties' Contentions

Plaintiff asserts that the ALJ failed to resolve conflict between the VE's testimony and Plaintiff's past relevant work as a quality assurance analyst. Plaintiff argues that the mental RFC limited Plaintiff to only occasional contact with supervisors, coworkers, and the public, as well as to work in only low-stress environments. *Id.* at 13. Plaintiff contends that, in contrast, the Dictionary of Occupational Titles ("DOT") describes the duties of a quality assurance analyst as "including training software program users, making recommendations for improvements or corrections to programmers, making suggested modifications to conform to user standards, and responding to user requests to locate and correct program operating errors following the installation of a program." *Id.* at 13-14.

Plaintiff asserts that, consistent with her testimony, the job duties of her past relevant work required frequent airborne travel and driving to sites, and her past duties exceed the non-exertional limitations regarding occasional contact. Plaintiff observes that the quality assurance analyst is listed at a specific vocational preparation ("SVP") level of six, which generally requires over one year and up to two years of training to equal an average worker, and the ALJ failed to offer any explanation as to how an SVP level of six is contemplated by the RFC limiting Plaintiff to a low-stress environment. *Id.* at 14. Plaintiff argues that the ALJ's errors were not harmless as the ALJ did not proceed to step five of the analysis and, therefore, did not make any findings as to Plaintiff's

ability to perform other jobs in the national economy.  *Id.* at 15.

Defendant contends that the VE testified that "contact with supervisors, coworkers, and the public" is not defined by the DOT and an individual so limited, one akin to that posed in hypothetical during the hearing, would still be capable of performing Plaintiff's past relevant work. Defendant argues that it takes "more than the DOT description of a few possible duties suggesting the possibility of some contact with supervisors, coworkers, and the public to find an apparent conflict," and that nothing in the DOT's description obviously indicates that the occupation of quality assurance analyst requires more than occasional contact.  Defendant asserts that the ALJ need only follow up on obvious conflicts with the DOT.  (Doc. 17 at 7).

Defendant contends that the DOT description of the duties of a quality assurance analyst does not enumerate whether or not the occupation has a low-stress environment or requires work at a production pace uncontrolled by the Plaintiff, and there "can be no conflict with something not enumerated."  Defendant notes that the VE testified that low stress was not defined by the DOT and, based upon the definition provided by the ALJ and the VE's own experience, concluded that Plaintiff could perform the duties of a quality assurance analyst as actually performed, and the ALJ was entitled to rely upon the VE's experience to account for the job's requirements.  *Id.* at 8.

**B.  Governing Authority**

At step four, a claimant has the burden of showing that she can no longer perform her past relevant work.  20 C.F.R. § 404.1520(e); *id.* § 416.920(e).  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted).  The ALJ must look at the RFC and the physical and mental demands of the claimant's past relevant work.  The claimant must have the ability to perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy."  *Id.* at 844-845.  The claimant is not required to have the ability to perform both but, rather, one or the other.  *See Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (explaining that "[a] claimant must be able to perform her past relevant work either as actually performed or as generally performed in the

7

national economy") (citing *Pinto*, 249 F.3d 840 at 845).  The ALJ is not required to provide explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed.  *Pinto*, 249 F.3d at 845 ("[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job") (citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)).

"An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  A "VE's recognized expertise provides the necessary foundation for his or her testimony" and, accordingly, "no additional foundation is required." *Id.*  However, the ALJ cannot "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  The ALJ has an affirmative duty to inquire as to whether there are potential conflicts between the VE's testimony and the DOT and direct an explanation from the VE regarding any such conflicts. *See* SSR 00-4p; *see also Massachi*, 486 F.3d at 1152-53.  The ALJ must determine whether any such explanation is "reasonable and whether a basis exists for relying on the expert rather than the DOT." *Massachi*, 486 F.3d at 1153.

"For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent.  This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).  "This is not to say that ALJs are free to disregard the [DOT's] definitions or take them with a grain of salt—they aren't.  But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about.  Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id*.

Even if a VE proclaims that her testimony is consistent with the DOT, "[i]f a conflict is 'obvious or apparent,' this triggers the ALJ's obligation to inquire further … the focus of the conflict inquiry is the 'essential, integral, or expected' job requirements set forth in the DOT." *Lashaw O. v. Comm'r of Soc. Sec.*, No. 24-CV-1461-W-SBC, 2025 WL 1482282, at *13 (S.D. Cal.

May 23, 2025) (finding obvious conflict between DOT definition of housekeeper job, where common sense and real-world experience demonstrated majority of tasks required regular standing and walking, and RFC that plaintiff sit for five minutes every thirty minutes).

**C. Analysis**

As a preliminary matter, Plaintiff did not waive the issue of apparent conflict between the DOT and the VE's testimony. Plaintiff was not represented by counsel during the administrative hearings before the ALJ. (AR 1566, 1610). Thus, the ALJ had a heightened duty to explore all relevant facts. *See Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir. 1981). Even if Plaintiff had been represented by counsel, and as noted above, an ALJ has an affirmative duty to reconcile apparent conflicts between the DOT and the VE's testimony. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.") (quotation and citations omitted). Lack of counsel, however, does not by itself affect the validity of the hearing and warrant remand. *Vidal*, 637 F.2d at 713.

### i. *Hearing and RFC*

The ALJ held two hearings, one on February 4, 2021, and one on April 28, 2021. (AR 1564, 1608). In both, Plaintiff represented herself. VE John Komar appeared during the first hearing and VE Doug Lear appeared during the second. (AR 1566, 1610). The ALJ did not reach the portion of the hearing involving questions for the VE until the second hearing. There, the ALJ instructed Mr. Lear that his testimony be consistent with the DOT and its companion publications and, in the event there were deviations, to inform the ALJ of them and the reason for the deviations. Mr. Lear replied affirmatively. (AR 1590). Mr. Lear described Plaintiff's previous occupation as "DOT title quality assurance analyst," with DOT number 033.262-010, and involving light work, performed as sedentary, with an SVP of six. (AR 1590).

The ALJ described to Mr. Lear a hypothetical individual of the same age, education, and work experience as Plaintiff who, among other things, was limited to "occasional contact with supervisors, coworkers, and the general public," and "could only work in a low-stress

environment." (AR 1594-95). Mr. Lear asked for a definition of "low-stress," which the ALJ defined as an "environment where the [employee] does not have to work at a production-rate pace. Production-rate pace meaning an assembly line or other environment where the employee cannot control the rate at which they must perform work functions." The ALJ added that he did not "mean to eliminate jobs that have a production requirement." (AR 1595).

Mr. Lear stated that low stress was "not defined by the [DOT]. Based upon the definition provided by the judge and my experience as a vocational counselor, my opinions is that the job would still remain." (AR 1596). Mr. Lear then attested that "contact with the public and coworkers is not specifically defined by the DOT" but, based upon his experience, "the hypothetical of that job would still remain." (AR 1597). Plaintiff then was afforded the opportunity to ask questions of Mr. Lear. (AR 1597-1606). After Plaintiff finished her line of questioning, the ALJ asked Mr. Lear whether the answers he proffered regarding hypothetical limitations, including "interactions with coworkers" and "[l]ow-stress job definitions," were "based upon [his] years of training, education, and experience," and whether "all [his] testimony [was] within a reasonable degree of professional certainty." Mr. Lear applied in the affirmative. (AR 1606).

In his decision, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), including lifting 10 pounds occasionally and less than 10 pounds frequently, sitting for six hours, and standing or walking for two hours in an eight-hour workday, with the following restrictions: she can occasionally kneel and climb ramps and stairs. She can never crawl or climb ladders or scaffolds. She can frequently balance, stoop, and crouch. She can occasionally reach overhead and frequently reach in all other directions. She can never work at unprotected heights or around fast-moving machinery. She can perform work with *occasional contact with supervisors, coworkers, and the public*. She can perform work in a *low-stress environment defined as an environment in which the employee does not have to work at a production rate pace in which they cannot control the rate at which they must perform work functions, such as assembly line work, but not eliminating jobs that have a production requirement.*

(AR 30; emphasis added). The ALJ found, at step four, that Plaintiff could perform past work as a

10

quality assurance analyst (DOT 033.262-010).  (AR 38).

### ii.  Conflict with the DOT

The DOT ranks jobs from zero to eight based on the degree of interaction with people, with zero as the most involved and eight as the least human interaction existing in the labor force.  Job descriptions also include a letter notation regarding whether certain aspects of the job are significant (marked as "S") or not significant (marked as "N").  *See Ammie Y. v. Kijakazi*, No. 2:22-CV-00126-RHW, 2023 WL 6367659, at *1 (E.D. Wash. Sept. 29, 2023); *Castaneda v. Astrue*, No. EDCV 11-0508-JEM, 2012 WL 528326, at *7 (C.D. Cal. Feb. 15, 2012).  A review of the quality assurance analyst listing (DOT 033.262-010) evidences an SVP requirement of six.  DICOT 033.262-010.  The listing is also described as involving interaction with people at a level of six, namely at the "speaking-signaling" level, with interaction described as "not significant."  *See id.*

"Courts have found that jobs requiring only a 'not significant' degree of interaction … are consistent with RFCs limiting a claimant to occasional or limited contact with others."  *Shear v. Comm'r of Soc. Sec. Admin.*, No. CV-23-00871-PHX-SMB (ESW), 2024 WL 2786790, at *4 (D. Ariz. May 8, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 2784016 (D. Ariz. May 30, 2024); *see Robinson v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00070-PHX-DGC, 2022 WL 9833906, at *9 (D. Ariz. Oct. 17, 2022) ("'Jobs that rank the interaction-with-others function as "not significant" adequately account for limitations on a claimant's ability to interact with the public, co-workers and supervisors.'") (quoting *Kane v. Saul*, No. 3:18CV746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019), *report and recommendation adopted*, 2020 WL 130134 (E.D. Va. Jan. 10, 2020)).  Additionally, level six "is nearly the lowest rating possible for interacting with people[.]"  *Robinson*, 2022 WL 9833906, at *9 (citing *Howell v. Astrue*, No. CV 10-1241 LFG/CG, 2012 WL 13081662, at *20 (D.N.M. Mar. 20, 2012)).

It follows that the DOT listing for quality assurance analyst, at a level six for degree of interaction with others and with interaction noted as "not significant," does not conflict with the ALJ's limitation of "occasional contact with supervisors, coworkers, and the public."  Though the DOT does not define "occasional contact," it is reasonable to conclude that a low level of interaction, such as level six, encompasses such a limitation, particularly if the listing also provides

11

that such contact is "not significant" to the job.  As such, there is no obvious conflict with the DOT regarding the limitation of "occasional contact" and the ALJ's reliance on the VE's expertise as to this fact was not legal error.

Turning to the limitation of a "low-stress environment," no such limitation is defined in the DOT.  The ALJ defined it as an "environment where the [employee] does not have to work at a production-rate pace.  Production-rate pace meaning an assembly line or other environment where the employee cannot control the rate at which they must perform work functions."  (AR 1595).  Plaintiff asserts that a job as a quality assurance analyst has a SVP level of six and requires "training software program users, making recommendations for improvements or corrections to programmers, making suggested modifications to conform to user standards, and responding to user requests to locate and correct program operating errors following the installation of a program," and the ALJ failed to offer any explanation as to how a job contemplating such requirements did not conflict with the RFC limiting Plaintiff to a low-stress environment.  (Doc. 15 at 13-14).

First, the DOT's description of the job of quality assurance analyst includes substantially the same varied tasks as highlighted by Plaintiff, but it does not include any requirement that Plaintiff must perform all such tasks.  *See* DICOT 033.262-010; *Randazzo v. Berryhill*, 725 F. App'x 446, 447–48 (9th Cir. 2017) ("The ALJ properly relied on the [VE's] testimony that Randazzo could perform work as an electrical accessories assembler even though the ALJ assessed that he had [RFC] to perform 'low stress' jobs requiring only occasional decision making or occasional changes in the work setting.  The DOT's description of this occupation lists multiple varied tasks, but it does not include the requirement that the worker perform all of the tasks listed, or frequently change work settings.").

Second, given that the quality assurance analyst job description does not include any requirement that Plaintiff must perform all identified tasks, the fact that the position has an SVP of six does not obviously disqualify it due to a limitation to a low-stress environment.  The "skill level" of work is "not necessarily related to" the ability to handle stress in the workplace.  SSR 85-15.  SVP relates to the amount of time it takes for a typical worker to learn the job's duties and

"to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity …" *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  It follows that SVP does not relate to the stress of the environment or the production-rate pace of a job and any such factor is not defined by the DOT.

Third, the "fact that the DOT does not define 'low stress' does not bar a [VE] from offering an opinion that some jobs fall within this category and that Plaintiff could perform such jobs." *Gibson v. Astrue*, No. ED CV 11-795-PJW, 2012 WL 4513628, at *6 (C.D. Cal. Sept. 28, 2012). The ALJ defined a "low-stress environment" as one where the Plaintiff does not work at "[p]roduction-rate pace meaning an assembly line or other environment where the employee cannot control the rate at which they must perform work functions." (AR 1595).  Nothing in the DOT's description of the job duties of a quality assurance analyst suggests the work requires a production-rate pace or similar environment.  *Cf. Chanel T. v. Kijakazi*, No. 5:21-CV-00751-SP, 2022 WL 4647256, at *11 (C.D. Cal. Sept. 30, 2022) ("The VE testified that she defined production pace as a teamwork or machine driven type of situation, where you have to 'maintain pace along with someone else or a machine.'  The DOT describes the small products assembler job as requiring a worker to, among other things, position or fasten parts on an assembly line and work as a member of an assembly team … Even relying on the VE's own definition of production pace, there is plainly an apparent conflict with the DOT.").

Fourth, Plaintiff notes her testimony that the duties of her past relevant work required frequent airborne travel and driving to sites. (Doc. 15 at 14).  However, Plaintiff testified that these duties related to her job as a "technical representative" (AR 1575), not that they were her duties as quality assurance analyst (AR 1572-1574).  The VE noted her past occupation of quality assurance analyst to be "defined as light, performed as sedentary." (AR 1590).

Lastly, the ALJ instructed the VE that his testimony be consistent with the DOT and, if there were deviations, to inform the ALJ of them and the reason for the deviations, to which the VE replied affirmatively.  (AR 1590).  When asked regarding the definition of a "low-stress environment," the VE noted that low stress was "not defined by the [DOT]" and that, based upon the "definition provided by the judge and my experience as a vocational counselor, my opinions is

13

that the job would still remain." (AR 1596). Regarding the limitation to "occasional contact," the VE also attested that "contact with the public and coworkers is not specifically defined by the DOT" but, based upon his experience, "the hypothetical of that job would still remain." (AR 1597). After Plaintiff finished her line of questioning for the VE, the ALJ asked the VE whether the answers he proffered regarding hypothetical limitations, including "interactions with coworkers" and "[l]ow-stress job definitions," were "based upon [his] years of training, education, and experience," and whether "all [his] testimony [was] within a reasonable degree of professional certainty." The VE replied in the affirmative. (AR 1606).

Thus, even if there was a non-obvious conflict, the ALJ resolved any such conflict at the hearing. *See Garcia v. Comm'r of Soc. Sec.*, No. 1:22-CV-01473-SAB, 2023 WL 5917996, at *12 (E.D. Cal. Sept. 11, 2023) ("The VE expressly testified that certain aspects, 'such as goal setting, teaching through demonstration versus reading and exposure to the public [are] not addressed in the [DOT], so [he] had to supplement that information with [his] own professional experience and education.' The hearing transcript thus indicates that, even if there was a conflict, the ALJ resolved any apparent conflict at the hearing.").

*        *        *        *        *

In sum, the ALJ properly relied on the testimony offered by the VE and did not fail to resolve conflicts between the DOT, the VE's testimony, and Plaintiff's past relevant work.

### IV.    CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 15) is DENIED;

2. The ALJ's decision is affirmed; and

3. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and to then close this case.

IT IS SO ORDERED.

Dated:    **January 30, 2026**                                              
                                                    UNITED STATES MAGISTRATE JUDGE